# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

ZEECO, INC., an Oklahoma corporation, )
)
          Plaintiff, )
) Case No. 17-CV-384-JED-FHM
v. )
)
JPMORGAN CHASE BANK, National )
Association, )
)
          Defendant. )

## OPINION AND ORDER

The Court has for its consideration Plaintiff's Motion for Remand and Brief in Support (Doc. 28). Defendant filed a Response and Objection (Doc. 35), Plaintiff filed a Reply (Doc. 41), and both parties submitted supplemental briefs (Doc. 50, 51).

**I.    Background**

Plaintiff Zeeco, Inc. ("Zeeco"), an Oklahoma corporation, contracted with Fernas Construction India Pvt. Ltd. ("Fernas") to supply and install a flare system at a site in India owned by ONGC Petro Additions, Ltd. ("OPAL"). (Doc. 2 at 67 of 104 [First Am. Compl. at ¶ 16]).[1] As part of the Zeeco-Fernas transaction, Zeeco caused JPMorgan Chase Bank ("Chase") to issue bank guarantees ("the Bank Guarantees") to Fernas in an amount totaling approximately USD $1,500,000. (*Id*. at 67-68 [First Am. Compl. at ¶ 17]). The Bank Guarantees were secured by letters of credit issued under loan agreements between Chase and Zeeco. (*Id*. at 68 [First Am. Compl. at ¶ 17]).

---

[1] The page numbers cited in this opinion are those found in the header of each document. Also, the Court will generally refer to Plaintiff's original Petition, which was filed in state court, as the "Complaint" and the First Amended Petition as the "First Amended Complaint."

According to Zeeco's First Amended Complaint, Zeeco performed all related work to the satisfaction of OPAL, and OPAL issued Zeeco a Certificate of Completion on April 28, 2016. (*Id*. [First Am. Compl. at ¶¶ 19-20]). Despite this Certificate of Completion, Fernas made a demand for payment under the Bank Guarantees in India on or about October 25, 2016. (*Id*. [First Am. Compl. at ¶ 21]). Zeeco contends that Fernas sought fraudulent payment under the Bank Guarantees due to its own financial woes. (*Id*. [First Am. Compl. at ¶ 22]).

On October 26, 2016, Zeeco initiated an action in the Tulsa County District Court and filed a motion seeking to enjoin Chase from paying or transferring any funds to Fernas. (*Id*. at 13, 23). The Tulsa County District Court granted an *ex parte* temporary restraining order that same day, stating that "Defendant JP Morgan [Chase] is Restrained from transferring or paying Fernas Construction India Pvt Ltd." (*Id*. at 27). Despite the TRO, Chase honored the Bank Guarantees and made payment to Fernas no later than 12:20 p.m. on October 27, 2016 (Mumbai time). (*Id*. at 72 [First Am. Compl. at ¶ 33]).

On June 20, 2017, Zeeco filed its First Amended Verified Petition and Claim for Restitution, which includes three counts: (1) wrongful honor of the Bank Guarantees and breach of the loan agreements, (2) misappropriation of funds, and (3) indirect contempt of court. (*Id*. at 74-77 [First Am. Compl. at ¶¶ 38-57]). Chase was served with a copy of the summons and the amended petition on June 20, 2017. (Doc. 2 at 1 [Notice of Removal at ¶ 2]). On June 30, 2017, Chase filed a Notice of Removal based on diversity of citizenship. (*Id*. at 2-3 [Notice of Removal at ¶¶ 4-5]).

On July 31, 2017, Zeeco filed a Motion for Remand and Brief in Support (Doc. 28). In that Motion, Zeeco argued that the entire case should be remanded pursuant to the *Younger* abstention doctrine. (*Id*. at 14). In the alternative, Zeeco argued that this Court should remand

only the civil contempt proceeding and stay the remaining claims. (*Id*. at 21). Zeeco has since abandoned the first argument and is no longer requesting remand of the entire case. (*See* Doc. 41 at 3, 10).

## II. Discussion

### A. *Younger* Abstention

The Court will first address whether the *Younger* abstention doctrine applies in this case. In *Younger v. Harris*, a California man filed a complaint in federal court seeking to enjoin the state from prosecuting him. 401 U.S. 37, 38-39 (1971). A three-judge panel held that the California Criminal Syndicalism Act under which he was charged was unconstitutional and, therefore, restrained the state district attorney from further prosecution of the man for violating the Act. *Id*. at 40. The Supreme Court reversed the panel's judgment on the basis that federal courts must not "stay or enjoin pending state court proceedings except under special circumstances." *Id*. at 41. According to the Court, "Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Id*. at 43. One reason behind this "longstanding public policy" is "the basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id*. at 43-44. Specifically, duplicative legal proceedings should be avoided "where a single suit would be adequate to protect the rights asserted." *Id*. at 44. Another reason for restraint is "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate

ways." *Id*. In short, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id*. at 45.

Although the *Younger* doctrine arose in a criminal context, it has since been applied in other circumstances. In *Juidice v. Vail*, the main case on which Zeeco relies, a judgment debtor and other co-plaintiffs brought a class action suit in federal court to enjoin the state's use of its statutory contempt procedures, arguing that the procedures violated the Fourteenth Amendment. 430 U.S. 327, 330 (1977). The Supreme Court held that the *Younger* doctrine applied and the federal case had to be dismissed. *Id*. at 335-37. Notably, the Court described a state's contempt power as lying "at the core of the administration of a State's judicial system." *Id*. at 335. According to the Court, "federal-court interference with the State's contempt process is 'an offense to the State's interest . . . likely to be every bit as great as it would be were this a criminal proceeding.'" *Id*. at 336 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

Zeeco also points to the Supreme Court case *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). In *Pennzoil*, Texaco filed a § 1983 case to challenge the constitutionality of Texas's judgment enforcement procedures. 481 U.S. at 6. Before the Texas court had entered judgment in the state court case, Texaco filed the federal case seeking to enjoin the opposing party from taking any action to enforce the state court judgment. *Id*. Again, the Supreme Court held that the *Younger* abstention doctrine applied and ordered the district court to dismiss the case. *Id*. at 13, 18.

What *Younger*, *Juidice*, and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings—be it a prosecution (*Younger*), a contempt proceeding (*Juidice*), or the enforcement of a civil judgment (*Pennzoil*).

Unlike in those cases, there is no ongoing state proceeding in this case. The state proceeding ended when the case was removed to this Court.

Zeeco points to a few cases from other circuits to support its argument that *Younger* can apply in the context of removal, but these cases are not persuasive. The first case cited by Zeeco, *Employers Resource Management Co., Inc. v. Shannon*, 65 F.3d 1126 (4th Cir. 1995), is inapposite. In that case, Employers Resource Management ("ERM") attempted to remove a state proceeding to federal court, but this was not the focus of the Fourth Circuit's opinion. The Fourth Circuit dealt with ERM's separate claim for injunctive and declaratory relief, finding that *Younger* required the federal district court to abstain from providing such relief. *Id*. at 1129, n.2 ("Because 28 U.S.C. § 1447(d) precludes an appeal of the district court's decision to remand the first case brought by ERM, the present appeal only concerns the district court's dismissal of the claim for equitable relief.").

Zeeco further cites *Lutz v. Calme*, an unpublished Sixth Circuit opinion, and *City of Chesapeake v. Sutton Enterprises, Inc.*, an opinion from the Eastern District of Virginia. In *Lutz*, the Sixth Circuit affirmed the district court's denial of a petition to remove a state court traffic violation prosecution. *Lutz v. Calme*, No. 98-6570, 1999 WL 1045163 (6th Cir. Nov. 9, 1999) (unpublished). The Sixth Circuit applied *Younger*, noting that "there was an ongoing state proceeding at the time Lutz initiated this case." *Id*. at *1. However, it seems as though the Sixth Circuit treated this pro se litigant's petition for removal as more analogous to a separate complaint alleging constitutional issues with the state's prosecution, like in *Younger v. Harris*. *See id*. ("[F]ederal courts will not interfere with ongoing criminal proceedings being carried out by a state government, even in the face of alleged constitutional violations.").

The *City of Chesapeake* case is also not particularly helpful to Zeeco. Though the court did conclude in its *Younger* analysis that the "ongoing state proceeding" requirement was met because "but for defendant's removal . . . state court proceedings would be ongoing," it is unclear why a *Younger* analysis was necessary at all. *City of Chesapeake v. Sutton Enterprises, Inc.*, 138 F.R.D. 468, 474 (E.D. Va. 1990). There was no diversity of citizenship between the parties (*id*. at 471), and the court ultimately concluded there was no federal question jurisdiction (*id*. at 478), so remand was required based on lack of subject matter jurisdiction.

Moreover, Chase references several cases concluding that *Younger* cannot apply in the context of removal. The Seventh Circuit, for example, has stated that "[r]emoval under 28 U.S.C. § 1441 simply does not leave behind a pending state proceeding that would permit *Younger* abstention." *Village of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008). District courts across the country have come to the same conclusion. *See, e.g., N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 989 F. Supp. 2d 479, 483 (E.D.N.C. 2013) ("Where a case has been removed from state court, the state court has lost its jurisdiction over the matter. . . . Thus, as there is no ongoing state judicial proceeding here, the first requirement of *Younger* fails to be satisfied and abstention would be wholly inappropriate."); *Virginia ex rel. Kilgore v. Bulgartabac Holding Grp.*, 360 F. Supp. 2d 791, 797 (E.D. Va. 2005) ("Thus, as of the time of removal, the removed action is not pending in the state court. . . . For that reason, the removed case cannot satisfy the threshold facet of *Younger* abstention."); *Harp v. Starline Tours of Hollywood, Inc.*, No. 2:14-cv-07704-CAS(Ex), 2015 WL 11118109, at *2 (C.D. Cal. May 13, 2015) (unpublished) ("Plaintiffs appear to contend that removing an action from state court creates a pending state court proceeding with which the removed action, now in federal court, conflicts. . . . This argument fails because '[r]emoval under 28 U.S.C. § 1441 simply does not leave behind a

pending state proceeding that would permit *Younger* abstention.'"); *Indymac Venture, LLC, v. Silver Creek Crossing*, Nos. C09-1069Z, C09-1222Z, 2009 WL 3698513, at *2 (W.D. Wash. Nov. 3, 2009) (unpublished) (rejecting theory that removal leaves behind a state proceeding relevant to the *Younger* abstention analysis). This Court finds these cases to be persuasive and, therefore, finds the *Younger* doctrine inapplicable to this case.

### B. An Alternate Basis for Partial Remand

Despite the inapplicability of the *Younger* doctrine, the Court finds it necessary to remand the contempt proceeding in this case based on principles of comity and respect for the State of Oklahoma's court system. As noted above, the Supreme Court has described federal-court interference with a state's contempt process as a significant offense to that state's interest. *See Juidice*, 430 U.S. at 336-37. The Supreme Court provided similar commentary in an earlier case, quoted more recently by the Fifth Circuit Court of Appeals: "[T]he sole adjudication of contempts, and the punishments thereof [belong] exclusively . . . to each respective court." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir.1985) (alterations in original) (quoting *In re Debbs*, 158 U.S. 564, 594-95 (1895)). Though the Supreme Court has disapproved of *In re Debbs* in regard to a person's right to a jury trial "when serious punishment for contempt is contemplated," *Bloom v. Illinois*, 391 U.S. 194, 208 (1968), the Fifth Circuit interpreted *In re Debbs* as supporting a separate proposition that "[e]nforcement of an injunction through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order." *Waffenschmidt*, 763 F.2d at 716.

Given this view of contempt proceedings, it is not surprising that federal courts have been reluctant to allow the removal of such proceedings from state court. In *Asher v. A.G. Edwards & Sons, Inc.*, the plaintiff removed the defendant's motion for contempt to federal district court. 272

7

F. App'x 357, 357-58 (5th Cir. 2008). The district court denied the defendant's motion to remand, finding that the motion for contempt was actually a disguised petition for damages subject to removal under 28 U.S.C. § 1441. *Id*. The Fifth Circuit reversed, noting that the plaintiff was "the master of his complaint" and could have filed claims that would have been subject to removal. *Id*. at 359. Instead, the plaintiff raised claims "only under state laws that govern contempt of court"—claims the Court stated were not removable for "obvious" reasons. *Id*. at 358, 359. Referencing *Juidice*, the Court explained that allowing a federal court to address the merits of a state court motion for contempt "would transgress the very principle of federalism the [*Younger*] rule seeks to protect." *Id*. Addressing the merits of the contempt motion was, thus, "a task for the state court that is alleged to have been offended." *Id*.

The case that most closely mirrors the case at hand is *Gray v. Petoseed Co., Inc.*, Nos. 96-1859, 96-1862, 96-1860, 96-1863, 96-1861, 96-1864, 1997 WL 716454 (4th Cir. Nov. 18, 1997) (unpublished). In *Petoseed*, three watermelon farmers filed actions against Petoseed Co., Inc., in state court asserting both fraud and contempt of court. *Id*. at *1. Petoseed removed the cases to federal district court based on diversity jurisdiction, and that court dismissed the fraud claims and remanded the contempt claims. *Id*. at *1, 3. As to the contempt claims, the district court found that it had subject matter jurisdiction over those claims but "nonetheless abstained from resolving the contempt claims under principles of comity and respect for the state court." *Id*. at *1.

On appeal to the Fourth Circuit, Petoseed claimed that the district court erred in abstaining from exercising jurisdiction over those claims. *Id*. at *2. The Fourth Circuit affirmed, however, holding that the district court "correctly abstained from hearing the contempt claims because Petoseed's alleged defiance of the state court orders places the integrity of that court at stake." *Id*. The Court further reasoned that "the state court has the authority and ability to fashion

8

an appropriate remedy if it finds Petoseed in contempt of its orders" and that "[i]t would be a serious interference with the orderly administration of justice for the district court to decide when a state court order has been violated and how it should be remedied." *Id*. The Fourth Circuit did not apply *Younger*, noting that there was no pending state proceeding at the time, but it affirmed the district court's remand based on "principles of comity." *Id*. The Fourth Circuit further found no statutory authority precluding the district court from severing the contempt claims from the fraud claims "and retaining jurisdiction over one while remanding the other." *Id*. at *3.

A look into how contempt proceedings are handled in Oklahoma provides additional support for remanding Zeeco's application for a contempt citation in this case. Notably, a contempt proceeding in Oklahoma is "ordinarily regarded as a collateral or separate action from the underlying case and is separately appealable." *Lerma v. Wal-Mart Stores, Inc.*, 148 P.3d 880, 883 (Okla. 2006). When a party is charged with contempt, that party may demand a jury trial. *Okla. Stat.* tit. 21, § 567(A). Ultimately, the party is found either "guilty" or "not guilty" of contempt. *See Lerma*, 148 P.3d at 822 (involving defendants who were found not guilty of indirect contempt).

Disobedience of an injunction granted by an Oklahoma court "may be punished as a contempt, by the court or any judge who might have granted it in vacation." *Okla. Stat.* tit. 12, §1390. If the court is satisfied that the injunction was breached, the party guilty of the breach may be required to make immediate restitution to the injured party. *Id*. Moreover, indirect contempt of court[2] may be punished by a fine or imprisonment. *Okla. Stat.* tit. 21, § 566(A); *see also Henry*

---

[2] Indirect contempt is the "willful disobedience of any process or order lawfully issued or made by [the] court," whereas direct contempt consists of "disorderly or insolent behavior committed during the session of the court in its immediate view." *Okla. Stat.* tit. 21, § 565. Zeeco made an application for an indirect contempt citation against Chase for willfully disobeying the temporary restraining order issued by the Tulsa County District Court. (Doc. 7).

*v. Schmidt*, 91 P.3d 651, 654 (Okla. 2004). ("The legislature has provided for a fine and imprisonment as punishment for both direct contempt and indirect contempt.").

Given the quasi-criminal nature of contempt proceedings in this state and the treatment of contempt proceedings by the circuit courts in *Asher* and *Petoseed*, this Court has determined that it would be inappropriate for it to adjudicate Zeeco's application for a contempt citation against Chase. Though this Court recognizes that it has "a strict duty to exercise the jurisdiction that is conferred upon [it] by Congress," that duty is not absolute. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). In this unique circumstance where a party has allegedly violated a state court's order before the case has been removed, the Court finds that the contempt proceeding must be severed from the remaining claims and remanded back to the state court for proper adjudication. Determination of whether Chase violated the TRO—and, if so, what punishment is required, if any—is a matter for the Tulsa County District Court.

In its Motion for Remand, Zeeco asks that the Court stay the remaining claims until the state court "fully and finally resolves the issues in the contempt proceeding." (Doc. 28 at 21). Zeeco reasons that if the state court finds Chase in contempt of court and awards Zeeco restitution, the remaining claims may become moot. (*Id*. at 22). Chase, on the other hand, contends that a stay would "not correct the flaw in what is really a request for full remand in 'partial remand's clothing.'" (Doc. 50 at 4). A stay, Chase argues, would lead to one or the other of two "unjust and ill-advised outcomes"—either the state court will decide the important substantive issues, depriving Chase of its right to a federal forum, or this Court will eventually address the merits after considerable delay, possibly coming to an opposite conclusion than the state court. (*Id*.).

The Supreme Court has established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. at 254-55. If there is "'even a fair possibility' . . . that the stay would damage another party," then the party applying for the stay "must demonstrate 'a clear case of hardship or inequity.'" *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (quoting *Landis*, 299 U.S. at 255).

In this case, it is clear there are some overlapping legal issues between the contempt application and Zeeco's other claims. For example, Chase has raised the separate juridical entity rule as a defense to both the contempt of court claim (Count III) and the wrongful honor claim (Count I). (*See* Doc. 26 at 9, 17). Though judicial economy may counsel toward granting a stay, Chase's right to a federal forum based on diversity jurisdiction outweighs any efficiency concerns. In *Evans Transportation Co. v. Scullin Steel Co.*, the Seventh Circuit reasoned that a stay which "operates to deny a litigant a federal forum to which the jurisdictional statutes appear to entitle him . . . should not be granted unless there are reasons going beyond the interest in judicial economy." 693 F.2d 715, 718 (7th Cir. 1982). "[A] loss of judicial economy . . . may be the unavoidable price of giving diversity litigants their rights under 28 U.S.C. § 1332." *Id*. at 720. Otherwise, res judicata and collateral estoppel could chip away at what is left to be determined in the federal suit. *Id*. at 718.

The Tulsa County District Court may, in its discretion, decide to stay its resolution of the contempt application while Zeeco's remaining claims are resolved in this Court. The undersigned respectfully recommends this course of action, as the contempt proceeding could become moot based on how the case proceeds here.

Zeeco's Motion for Remand (Doc. 28) is hereby **granted in part and denied in part**. The Motion is **granted** to the extent that it requests a remand of Zeeco's Application for Civil Indirect Contempt Citation (Doc. 7). Zeeco's request for a stay and its now-withdrawn request for a remand of the entire case are **denied**. The Court hereby directs the Court Clerk to sever and remand Zeeco's Application for Civil Indirect Contempt Citation (Doc. 7) to the Tulsa County District Court, where it was originally filed.

**ORDERED** this 21st day of December, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE