# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

ZEECO, INC., an Oklahoma corporation, )
)
          Plaintiff, )
) Case No. 17-CV-384-JED-FHM
v. )
)
JPMORGAN CHASE BANK, National )
Association, )
)
          Defendant. )

## **AMENDED OPINION AND ORDER**[1]

The Court has for its consideration Defendant's Motion to Dismiss and Opening Brief in Support (Doc. 26). Defendant filed a Response (Doc. 31), Plaintiff filed a Reply (Doc. 38), and both parties submitted supplemental briefs (Doc. 49, 53).

**I.    Background**

As explained in this Court's recent Order (Doc. 55), Plaintiff Zeeco, Inc. ("Zeeco"), an Oklahoma corporation, contracted with Fernas Construction India Pvt. Ltd. ("Fernas") to supply and install a flare system in India. (Doc. 2 at 67 of 104 [First Am. Compl. at ¶ 16]).[2] According to the First Amended Complaint, Zeeco caused JPMorgan Chase Bank, N.A. ("Chase") to issue "Bank Guarantees"[3] to Fernas in an amount totaling approximately USD $1,500,000. (*Id*. at 67-

---

[1] This Amended Opinion and Order contains changes on page 11, but it is otherwise identical to the original Opinion and Order (Doc. 58) issued on March 20, 2018.

[2] The page numbers cited in this opinion are those found in the header of each document. Also, the Court will generally refer to Plaintiff's original Petition, which was filed in state court, as the "Complaint" and the First Amended Petition as the "First Amended Complaint."

[3] As a preliminary matter, Chase contends that the Bank Guarantees are technically letters of credit. (Doc. 26 at 6, n.2). Zeeco does not dispute this. Nevertheless, in order to be consistent with the terminology used in the Amended Complaint and in the documents themselves, (*see* Doc. 48-1), the Court will refer to the letters of credit issued to Fernas as the "Bank Guarantees."

68 [First Am. Compl. at ¶ 17]). The Bank Guarantees were secured by letters of credit issued under loan agreements between Chase and Zeeco. (*Id*. at 68 [First Am. Compl. at ¶ 17]).

Zeeco alleges that it performed under the contract with Fernas, but Fernas made a demand for payment under the Bank Guarantees nonetheless. (*Id*. [First Am. Compl. at ¶¶ 19-21]). Zeeco contends that Fernas sought fraudulent payment under the Bank Guarantees due to its own financial woes. (*Id*. [First Am. Compl. at ¶ 22]).

On October 26, 2016, Zeeco initiated an action in the Tulsa County District Court and filed a motion seeking to enjoin Chase from paying or transferring any funds to Fernas. (*Id*. at 13, 23). The Tulsa County District Court granted an *ex parte* temporary restraining order that same day, stating that "Defendant JP Morgan [Chase] is Restrained from transferring or paying Fernas Construction India Pvt Ltd." (*Id*. at 27). Zeeco also sought an injunction from a court in Mumbai "out of an abundance of caution." (Id. at 69 [Am. Compl. at ¶ 29]). A hearing before the Mumbai court was ultimately scheduled for 1:00 p.m. (Mumbai time) on October 27, 2016. (*Id*. at 71 [Am. Compl. at ¶ 30(f)]). Zeeco alleges that, despite the TRO and the impending court hearing in Mumbai, Chase honored the Bank Guarantees and made payment to Fernas no later than 12:20 p.m. on October 27, 2016 (Mumbai time). (*Id*. at 72 [First Am. Compl. at ¶ 33]).

On June 20, 2017, Zeeco filed its First Amended Verified Petition and Claim for Restitution, which includes three counts: (1) wrongful honor of the Bank Guarantees and breach of the loan agreements, (2) misappropriation of funds, and (3) indirect contempt of court. (*Id*. at 74-77 [First Am. Compl. at ¶¶ 38-57]). On December 21, 2017, this Court entered an Order (Doc. 55) remanding the indirect contempt of court claim to the Tulsa County District Court. Because this third claim is no longer before this Court, Chase's Motion to Dismiss is moot as to that claim.

2

## II. Legal Standards

"To survive a motion under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court must liberally construe the pleadings, take all well-pleaded facts as true, and make all reasonable inferences in favor of the non-moving party. *Brokers' Choice of Am.*, 861 F.3d at 1105.

## III. Discussion

### A. Matters Outside of the Pleadings

Fed. R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." "A district court may, however, consider documents attached to or referenced in the complaint if they are 'central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice of Am., Inc.*, 861 F.3d at 1103 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Zeeco argues that the only integral documents, besides those attached to the Amended Complaint, are the Second Amended and Restated Export Loan Agreement ("Export Loan Agreement") and the Fourth Amended and Restated Credit Agreement ("Credit Agreement").[4] (Doc. 31 at 25-26). The Court

---

[4] Zeeco argues that the legal opinion attached to the Credit Agreement should not be considered by the Court in ruling on Chase's Motion to Dismiss. (*See* Doc. 26-1 at 152-58). This legal opinion appears to have been written by counsel representing Zeeco at the time Zeeco entered into the Credit Agreement with Chase, and it reflects the counsel's conclusions concerning various parts of the Credit Agreement. The

3

finds that the Continuing Agreement for Commercial and Standby Letters of Credit Between Zeeco, Inc. and JPMorgan Chase Bank, N.A. ("Continuing Agreement") is also central to Zeeco's claims, as it supplements the Credit Agreement in regard to letters of credit. Furthermore, the Court finds that the Bank Guarantees themselves are integral, given that Zeeco is asserting that Chase wrongfully honored those instruments. All other documents brought forth by Chase as part of its Motion to Dismiss will not be considered at this time.[5]

### B. Count I

In regard to the first claim—wrongful honor of the Bank Guarantees and breach of the loan agreements—Chase makes several arguments for dismissal. First, Chase contends that Indian law governs the honor of the Bank Guarantees by Chase's Mumbai Branch and that Zeeco has failed to allege a violation of Indian law. (Doc. 26 at 14-15).

"[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997). Oklahoma has adopted Article 5 of the Uniform Commercial Code ("U.C.C."), which includes choice-of-law rules pertaining to letters of credit. Under *Okla. Stat.*, tit. 12A, § 5-116(a), "[t]he liability of an issuer . . . for action or omission is governed by the law of the jurisdiction chosen by an agreement in the form of a record signed

---

Court sees no reason to consider this opinion central to Zeeco's claims and will not include it in evaluating Chase's Motion to Dismiss.

[5] The other documents, as described by the Vice President of Chase in his Declaration (Doc. 26-1 at 2-3) include: "the six Standby Letter of Credit Applications made by Zeeco to Chase," "true and correct copies of Zeeco's approval of the forms of the six letters of credit to be issued by Chase Chicago Branch to Chase Mumbai Branch," "true and correct unsigned file copies of the six letters of credit issued by Chase Mumbai Branch to [Fernas]," and "true and correct copies of the drawing documents presented by [Fernas]." (Doc. 26-1 at ¶¶ 4-7).

or otherwise authenticated by the affected parties . . . or by a provision in the person's letter of credit, confirmation, or other undertaking."

Chase points to the Bank Guarantees themselves, issued by Chase Mumbai Branch to Fernas. Two of these Bank Guarantees include a provision stating that "this guarantee shall be governed and construed in accordance with Indian laws and subject to the exclusive jurisdiction of Indian Courts of the place from where tenders have been invited." (*See* Doc. 48-1 at 5, 10). Yet the Fourth Amended and Restated Credit Agreement ("Credit Agreement") between Chase and Zeeco clearly provides that Oklahoma law governs. Section 11.09(a) of the Credit Agreement states that the "[Credit] Agreement shall be construed in accordance with and governed by the law of the State of Oklahoma." (Doc. 26-1 at 111). Furthermore, Section 2.05(a) of the Credit Agreement includes the following provision:

> In the event of any inconsistency between the terms and conditions of this Agreement and the terms and conditions of any form of letter of credit application or other agreement submitted by Borrowers to, or entered into by Borrowers with, the Issuing Bank relating to any Letter of Credit, **the terms of this Agreement shall control**.

(Doc. 26-1 at 44) (emphasis added).

Although the Bank Guarantees are significant to the case, the Court finds that Zeeco's cause of action ultimately rests upon the Credit Agreement. *See Transamerica Delaval Inc. v. Citibank, N.A.*, 545 F. Supp. 200, 204 (S.D.N.Y. 1982) ("[The plaintiff's] cause of action rests upon its Credit Agreement with Citibank, not the letter of credit issued by Citibank . . . . While the letter of credit was clearly contemplated by the Credit Agreement, it is an independent contract."). The parties agree that the Credit Agreement governs the overall relationship between Zeeco and Chase. (*See* Doc. 26 at 12, n.6, Doc. 31 at 19). In fact, the Credit Agreement sets out the "terms and conditions" purportedly applicable to any letters of credit issued by Chase on

5

Zeeco's behalf. (*See* Doc. 26-1 at 44-50). The Court further notes that Zeeco was not a party to the Bank Guarantees, further undercutting the proposition that any choice-of-law within those Guarantees would control here. Accordingly, the Court finds that Oklahoma law applies to this claim.

In the alternative, Chase argues that if the U.C.C. applies, Zeeco has not adequately pleaded a lack of good faith. (Doc. 26 at 15-17). All that is required to show good faith, according to Chase, is "honesty in fact," and Chase contends that Zeeco has failed to allege that Chase was not "honest in fact." (*Id*. at 15).

Under what is known as the independence principle, "[t]he issuer's liability to pay the beneficiary upon proper demand is independent of the contract between the applicant and the beneficiary." *State ex rel. Doak v. Pride Nat'l Ins. Co.*, 386 P.3d 1058, 1061 (Okla. Civ. App. 2016). This principle "allows the issuer to act quickly and surely upon presentment of the draft to determine only whether the demand meets the requirements of the letter of credit and not whether the beneficiary is entitled to payment from the applicant." *Id.* Nonetheless, *Okla. Stat.* tit. 12A, § 5-109 provides an important "fraud exception" to the independence principle:

> (a) If a presentation is made that appears on its face strictly to comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant:
>
> > (1) The issuer shall honor the presentation, if honor is demanded by:
> >
> > > (i) a nominated person who has given value in good faith and without notice of forgery or material fraud;
> > >
> > > (ii) a confirmer who has honored its confirmation in good faith;
> > >
> > > (iii) a holder in due course of a draft drawn under the letter of credit which was taken after acceptance by the issuer or nominated person; or

> (iv) an assignee of the issuer's or nominated person's deferred obligation that was taken for value and without notice of forgery or material fraud after the obligation was incurred by the issuer or nominated person; and
>
> (2) The issuer, acting in good faith, may honor or dishonor the presentation in any other case.

Taking Zeeco's well-pleaded facts as true, honor of Fernas's demands under the Bank Guarantees—and the subsequent withdrawal from Zeeco's account—facilitated a material fraud by the beneficiary, Fernas, on the initial applicant, Zeeco. As Comment 1 to U.C.C. § 5-109 explains, "[m]aterial fraud by the beneficiary occurs only when the beneficiary has no colorable right to expect honor and where there is no basis in fact to support such a right to honor." According to the Amended Complaint, Zeeco had fully performed under its contract with Fernas, such that Fernas had no right to demand payment under the Bank Guarantees. (Doc. 2 at 68 [Am. Compl. at ¶¶ 19, 21]).

Even so, the statute does not demand dishonor, only that the issuer act in good faith,[6] which is defined in Article 5 as "honesty in fact in the conduct or transaction concerned." *Okla. Stat.* tit. 12A, § 5-102(a)(7). *See also* Oklahoma Comments to § 5-109 ("The issuer may in good faith (tested by the issuer's honesty in fact) honor in the face of the applicant's claim of fraud, or the issuer may dishonor and defend the dishonor by showing forgery or material fraud.").

Chase contends that Zeeco has not pleaded lack of good faith, but the Court disagrees. In the Amended Complaint, Zeeco recites the "honesty in fact" definition applicable to good faith in this context and proceeds to explain:

> JPMorgan's knowledge that Fernas's draw was without basis and would facilitate a material fraud on Zeeco, coupled with JPMorgan's knowledge of the [TRO], notice to JPMorgan that Fernas intended to withdraw its payment demand, JPMorgan's internal discussions concerning whether or not to comply with the [TRO], the pending court hearing in Mumbai of which JPMorgan had notice,

---

[6] Neither party argues that subsection (1) of § 5-109 applies in this case.

> JPMorgan's decision to willfully violate the [TRO] following its lengthy internal discussion among bank counsel and officers, and payment of the demands literally minutes before the Mumbai hearing, constitute ample evidence that JPMorgan did not honor the payment demands in good faith.

The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). This standard has been met here. Whether a bank failed to act in good faith in honoring a letter of credit should be left for the factfinder "[u]nless only one inference from the evidence is possible." *Lustrelon, Inc. v. Prutscher*, 428 A.2d 518, 527 (N.J. Super. Ct. App. Div. 1981). Chase is free to make the argument that only one reasonable inference is possible, but such an argument is best suited for a summary judgment motion. *See Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 (10th Cir. 2016) (citing *Empire Elecs. Co. v. U.S.*, 311 F.2d 175, 180 (2d Cir. 1962)) ("And '[w]here only one inference could reasonably be drawn from the undisputed evidentiary facts, then summary judgment would be proper.'")

Lastly, Chase argues that Zeeco fails to state a claim because Chase's Mumbai Branch should be treated as a "separate juridical entity" and Zeeco did not include the Mumbai Branch in this suit. (*Id*. at 17-18). Chase relies on the last sentence of U.C.C. § 5-116(b), codified as *Okla. Stat.*, tit. 12A, § 5-116(b).

Section 5-116, which is titled "Choice of Law and Forum," begins with a subsection concerning choice of law by agreement:

> (a) The liability of an issuer, nominated person, or adviser for action or omission is governed by the law of the jurisdiction chosen by an agreement in the form of a record signed or otherwise authenticated by the affected parties in the manner provided in Section 5-104 or by a provision in the person's letter of credit, confirmation, or other undertaking. The jurisdiction whose law is chosen need not bear any relation to the transaction.

*Okla. Stat.*, tit. 12A, § 5-116(a). The next subsection provides:

> (b) **Unless subsection (a) applies**, the liability of an issuer, nominated person, or adviser for action or omission is governed by the law of the jurisdiction in which the person is located. The person is considered to be located at the address indicated in the person's undertaking. If more than one address is indicated, the person is considered to be located at the address from which the person's undertaking was issued. **For the purpose of jurisdiction, choice of law, and recognition of interbranch letters of credit, but not enforcement of a judgment, all branches of a bank are considered separate juridical entities and a bank is considered to be located at the place where its relevant branch is considered to be located under this subsection.**

§ 5-116(b) (emphasis added). In context, it appears that subsection (b), including the separate juridical entity sentences, only applies if the affected parties have not agreed upon a choice of law. *See, e.g.*, *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 477 (S.D.N.Y. 2017) ("Section 5-116(b) sets forth the rules for determining what jurisdiction's substantive law controls where the parties have not chosen a particular jurisdiction's law in their agreement.").

Hawkland's U.C.C. Series, however, contends that the last sentence of subsection (b) "should be treated as separate from the provision dealing with the situation where no law is chosen in the first three sentences." James E. Byrne, 6B Hawkland U.C.C. Series § 5-116:8 [Rev] (2017). "In effect," the commentator provides, "this provision should have been a separate subsection and should be so treated." *Id*.

Hawkland provides the following commentary specifically regarding this last sentence:

> U.C.C. § 5-116(b) [Rev], Sentence 4 contains a special rule regarding a situation where there are branches of a bank involved. It is not unusual for an issuer to advise or confirm an undertaking through a branch or to nominate a branch to act. . . . Many banks that issue, are nominated under, or advise a letter of credit undertaking have branches in multiple states and even multiple countries. Where a bank has multiple branches, this rule makes it clear that **the branch (including head office) from which an undertaking was issued, as indicated in the undertaking, is the "issuer" and its location is the "relevant" location for purposes of "jurisdiction, choice of law, and recognition."**

*Id*. (emphasis added).

The case law on this topic is admittedly sparse. Many of the cases cited by Chase to support this theory are from New York and involve issues of attachment. *See, e.g.*, *Motorola Credit Corp. v. Standard Chartered Bank*, 21 N.E.3d 223, 230 (N.Y. 2014) (holding that New York's common law "separate entity rule" makes a judgment creditor's service of a restraining notice on a garnishee bank's New York branch ineffective to freeze assets held in foreign branches of the bank); *Motorola Credit Corp. v. Uzan*, 288 F. Supp. 2d 558, 560 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Advanced Emp't Concepts, Inc.*, 269 A.D.2d 101, 101 (N.Y. App. Div. 2000)) ("Under this [separate entity rule] doctrine, the 'mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment.'"); *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 608 (S.D.N.Y. 1997) (holding that a bank's two branch offices should be considered separate entities for attachment purposes); *Bluebird Undergarment Corp. v. Gomez*, 249 N.Y.S. 319 (N.Y. City Ct. 1931) (holding that property held in bank's Puerto Rico branch could not be attached by serving its New York branch); *Fid. Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113, 1119 (S.D.N.Y. 1996) ("[T]he Court agrees that the New York branch and the Manila office should be viewed as separate entities for the purposes of attachment and execution."). The Court finds these cases to be inapposite.

Pursuant to *Okla. Stat.* tit. 12A, § 5-102(a)(8), "honor" of a letter of credit is "performance of the issuer's undertaking in the letter of credit to pay or deliver an item of value." It is clear from the plain language of the Bank Guarantees that JPMorgan Chase Bank, N.A., is the relevant entity that undertook to pay Fernas. Half of the Bank Guarantees specifically state, "We, JPMorgan Chase Bank, N.A., . . . issuing this Guarantee through its branch at Mumbai . . . do hereby give this irrevocable and unconditional guarantee and undertake to pay immediately and on first

demand in writing any and all moneys to the aggregate total of [a specified amount of Indian rupees or American dollars] . . . ." (Doc. 48-1 at 4, 7, 12).[7] Moreover, all of the Bank Guarantees refer to the liability and obligations of JPMorgan Chase Bank, N.A.:

> [T]he liability of **JPMorgan Chase Bank, N.A.**, under this Guarantee is restricted to a [a specified maximum amount of Indian rupees or U.S. dollars] . . . .
>
> **JPMorgan Chase Bank, N.A.**'s liability pursuant to this Guarantee is conditional upon receipt of a valid and duly executed written claim, in original, by JPMorgan Chase Bank, N.A., Mumbai Branch . . . failing which all rights under this Guarantee shall be forfeited and **JPMorgan Chase Bank, N.A.**, shall stand absolutely and unequivocally discharged of all of its obligations hereunder."

(Doc. 48-1 at 3, 5, 8, 10, 13, 15) (emphasis added).

If JPMorgan Chase Bank, N.A., is the entity that undertook to pay Fernas under these Bank Guarantees, then the payment to Fernas would amount to JPMorgan Chase Bank, N.A., honoring the Bank Guarantees. Zeeco's wrongful honor claim would then be properly brought against JPMorgan Chase Bank, N.A. This inquiry strikes the Court as overly fact-dependent for a dismissal motion. Chase's Motion to Dismiss (Doc. 26) is therefore **denied** as to Count I.

C.  **Count II**

As to Zeeco's second claim, Chase contends that it did not misappropriate funds because it was entitled to reimbursement for any payment made on a letter of credit issued under the Credit Agreement—regardless of whether the draw was fraudulent. (Doc. 26 at 18). In support of this proposition, Chase cites § 2.05(f) of the Credit Agreement, which states in relevant part:

> Obligations Absolute:  Borrowers' joint and several obligation to reimburse [Letter of Credit ("LC")] Disbursements as provided in paragraph (e) of this Section shall be absolute, unconditional and irrevocable, and shall be performed strictly in

---

[7] The other three Bank Guarantees state, "We, JPMorgan Chase Bank, N.A., Mumbai . . . issuing this Guarantee through its branch at Mumbai . . . ." (*See* Doc. 48-1 at 2, 9, 14). This odd construction—essentially stating that Chase's Mumbai Branch is issuing a guarantee through its Mumbai branch—strikes the Court as a likely typographical error. At any rate, these three Bank Guarantees contain sufficient references to the liability and obligations of JPMorgan Chase Bank, N.A., to support a conclusion that JPMorgan Chase Bank, N.A., is the entity promising to perform under them.

> accordance with the terms of this Agreement under any and all circumstances whatsoever and **irrespective of . . . (ii) any draft or other document presented under a Letter of Credit proving to be forged, fraudulent or invalid in any respect** . . . . None of the Administrative Agent, the Lenders, the Issuing Bank, or any of their Related Parties, shall have any liability or responsibility by reason of or in connection with the issuance or transfer of any Letter of Credit or in any payment . . . thereunder . . . <u>provided</u> that the foregoing shall not be construed to excuse the Issuing Bank from liability to Borrowers to the extent of any direct damages . . . suffered by Borrowers that are caused by the Issuing Bank's failure to exercise care when determining whether drafts and other documents presented under a Letter of Credit comply with the terms thereof. **The parties hereto expressly agree that, in the absence of gross negligence or willful misconduct on the part of the Issuing Bank shall be deemed to have exercised care in each such determination.** In furtherance of the foregoing and without limiting the generality thereof, the parties agree that, with respect to documents presented which appear on their face to be in substantial compliance with the terms of a Letter of Credit, the Issuing Bank may, in its sole discretion, either accept and make payment upon such documents without responsibility for further investigation, regardless of any notice or information to the contrary, or refuse to accept and make payment upon such documents if such documents are not in strict compliance with the terms of such Letter of Credit.

(Doc. 26-1 at 47-48) (emphasis added). The Continuing Agreement contains a similar provision:

> 4. (a) Without limiting any other provisions of this Agreement or the Credit Agreement, Bank and each other Indemnitee (as defined in the Credit Agreement), shall not be responsible to Applicant for, and Bank's rights and remedies against Applicant and Applicant's obligation to reimburse the Bank under the Credit Agreement shall not be impaired by (i) honor of a presentation under any Credit which on its face substantially complies with the terms of such Credit . . . (ix) any acts, omissions or fraud by, or the solvency of, any beneficiary . . . .

(Doc. 26-1 at 161).

Despite these provisions, Oklahoma law provides that "[t]he obligations of good faith, diligence, reasonableness, and care prescribed by the Uniform Commercial Code may not be disclaimed by agreement." *Okla. Stat.* tit. 12A, § 1-302(b). "The parties, by agreement may determine the standards by which the performance of those obligations is to be measured if those standards are not manifestly unreasonable." *Id.* The Court does not interpret the above-cited provisions of the Credit Agreement and Continuing Agreement as defining the standard by which

good faith is to be measured. The Credit Agreement provision in particular determines what "care" will look like, but it does not address good faith.

Given that *Okla. Stat.* tit. 12A, § 5-109(a)(2) requires that honor of a letter of credit after notification of fraud be conducted in good faith, if at all, it follows that reimbursement from an applicant's account following the wrongful honor of a letter of credit would support a conversion-like claim under Oklahoma law.[8] As such, the Court finds that dismissal of this claim is unwarranted. The Court notes, however, that only tangible personal property may be converted under Oklahoma law. *Brown v. Okla. State Bank & Trust Co. of Vinita*, 860 P.2d 230, 232 n.4 (Okla. 1993). "When a person has a right to recover money, a **chose in action** exists." *Id.* (emphasis in original); *see also Okla. Stat.* tit. 60, § 312 ("A thing in action is a right to recover money or other personal property, by judicial proceedings."). The Court will consider any motion by Zeeco to amend its claim, as well as any objections brought forth by Chase. *See Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1251-1252 (granting plaintiff leave to amend its conversion claim to a claim of "Conversion/Thing in Action as Per 60 Okla. St. § 312," absent specific objections by defendant).

For the above-cited reasons, Chase's Motion to Dismiss (Doc. 26) is also hereby **denied** as to Count II.

**ORDERED** this 21st day of March, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[8] Conversion is defined in Oklahoma law as "an unauthorized assumption and exercise of the right of ownership over the personal property of another person that is inconsistent with the rights of the owner." Oklahoma Uniform Jury Instructions—Civil, § 27.1.